**AIRPORT PROFESSIONAL OFFICE CENTER 100 CONDOMINIUM ASSOCIATION, Thomas A. Brown and Mary Ann Anuszkiewicz, Appellants**

v.

**ZONING HEARING BOARD OF MOON TOWNSHIP, Moon Township and Parvis Jian, M.D.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2011.

Decided May 4, 2011.

Jonathan M. Kamin, Pittsburgh, for appellants.

John R. Linkosky, Carnegie, for appellee Parvis Jian, M.D.

Isobel Storch, White Oak, for appellee Zoning Hearing Board of Moon Township.

BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge BUTLER.

The Airport Professional Office Center 100 Condominium Association, Thomas A. Brown and Mary Ann Anuszkiewicz (collectively referred to as the Association) appeal from the September 24, 2010 order of the Court of Common Pleas of Allegheny County (trial court) affirming the decision of the Zoning Hearing Board of Moon Township (ZHB). Moon Township (Township) and Parvis Jian, M.D. (Dr. Jian) intervened at the time of the appeal to the trial court on the side of the ZHB. The issues before this Court are: 1) whether the trial court erred as a matter of law or abused its discretion in affirming the ZHB's decision finding that Dr. Jian was not administering the drug Buprenorphine to his patients; and 2) whether the trial court erred as a matter of law or abused its discretion in affirming the ZHB's decision that Dr. Jian's use of his office fits within the definition of a medical office and not a methadone treatment facility as defined by the Moon Township Code (Code). For the reasons that follow, we affirm the order of the trial court.

Dr. Jian operates a medical practice at 1150 Thorn Run Road, Suite 101, Coraopolis, Moon Township, Pennsylvania (Property). From 1988 until 2007, Dr. Jian practiced obstetrics and gynecology (OB/GYN) at the Property. After 2007, Dr. Jian continued to work at the Property as a general medical practitioner. Part of his practice includes the treatment of opioid-addicted patients. The Property is located in a Business Park (B–P) Zoning District, which includes, but is not limited to, corporate offices, financial institutions, libraries, professional offices, and medical offices; it does not include methadone treatment facilities. Methadone treatment facilities

and methadone clinics are only permitted in an M–1 Industrial Zoning District. Section 208 of the Code defines a "medical office" as:

A building or structure where one (1) or more licensed medical professionals, provide diagnosis and treatment to the general public without surgical procedures, overnight accommodation or pharmacy and shall include such uses as reception areas, offices, consultation rooms, and x-ray, providing that all such uses have access only from the interior of the building or structure.

Original Record (O.R.) at 62. It defines a "methadone treatment facility" as:

A facility owned and operated by a private for-profit entity, a private non-profit entity or the Allegheny County Department of Human Services Bureau of Drug and Alcohol where the drug 'Methadone' or similar substances are prescribed and administered for the treatment, maintenance or detoxification of persons.

O.R. at 62.

In October of 2009, the Township Zoning Officer, upon receiving a complaint concerning Dr. Jian's use of the Property, advised Dr. Jian that the Township did not have an occupancy permit on record for the Property. Dr. Jian filed an application for an occupancy permit which required him, *inter alia*, to provide an explanation of the manner in which the Property would be used. Dr. Jian indicated on the application that the Property would be used, in part, to treat opioid addicts with the drug Buprenorphine.

On January 4, 2010, the Zoning Officer issued a formal determination stating that Dr. Jian was in violation of Section 208 of the Code on the basis that: 1) Buprenorphine is similar to methadone and, there-

fore, cannot be prescribed and administered in a B–P Zoning District; and, 2) since Buprenorphine is prescribed and administered for the treatment, maintenance and/or detoxification of opioid addicts, Dr. Jian was not using the Property as a medical office, but as a methadone treatment facility which is not permitted in a B–P Zoning District. A letter was sent to Dr. Jian ordering that he cease and desist administering Buprenorphine. In addition, the Township approved Dr. Jian's application for an occupancy permit for a medical office, but on the condition that no drug treatments for opioid addicts take place at the Property. Dr. Jian appealed the determination on the basis that he wanted to continue treating opioid-addicted patients.

A hearing was held before the ZHB on February 11, 2010. On February 19, 2010, the ZHB issued its decision finding, *inter alia*, that: 1) Buprenorphine is a substance similar to methadone in that both are prescribed and administered for the treatment, maintenance or detoxification of persons; 2) the administration of Buprenorphine from a medical office is not a permitted use in a B–P Zoning District; and 3) Dr. Jian was prescribing but not administering Buprenorphine from his office since the time he filed for his occupancy permit. The ZHB concluded that Dr. Jian was permitted to continue to prescribe Buprenorphine or other federally-approved Schedule III drugs, but could not administer any drugs for the purpose of treating opioid addicts at the Property. The Association appealed the ZHB's decision to the trial court on September 14, 2010, which affirmed the decision of the ZHB on September 24, 2010. The Association appealed to this Court.[1]

1. "When no additional evidence is taken fol- lowing the determination of a zoning hearing

■ The Association argues that the ZHB committed an error of law by concluding that Dr. Jian was not administering the drug Buprenorphine. It contends that the Code does not specifically define the term "administer," and it was an error for the ZHB to create a hyper-technical definition of the word since Pennsylvania case law has not previously defined "administer" as it relates to the dispensing of medicinal drugs, but has explained that physicians administer medical treatments. The Association argues that Dr. Jian is not only prescribing Buprenorphine, he is clearly administering it because he is treating opioid addicts during weekly in-office medical treatments.

Section 1903(a) of the Statutory Construction Act of 1972 states, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa. C.S. § 1903(a). The Code does not define the word "administer." This Court has held that, in zoning matters, "[u]ndefined terms are given their plain meaning, and any doubt is resolved in favor of the landowner and the least restrictive use of the land." *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484, 491 (Pa.Cmwlth.2004). "The statute's plain language generally offers the best indication of legislative intent." *Martin v. Dep't of Transp., Bureau of Driver Licens-*

ing, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006).

According to *Merriam–Webster's Collegiate Dictionary*, "administer" means: to manage or supervise the execution, use, or conduct of something (e.g., a trust fund); to mete out or dispense (e.g., punishment); to give ritually (e.g., the last rites); to give remedially (e.g., a dose of medicine); to perform the office of administrator; to furnish a benefit, minister (e.g., to an ailing friend); or to manage affairs. *Merriam–Webster's Collegiate Dictionary* 16 (11th ed.2004).

The Association would have this Court hold that a reasonable person would find that the term "administer" could be used to encompass all forms of medical services that are provided to a patient. The Association provides case law from Pennsylvania and other states that supports this interpretation.[2] It also indicates that a reasonable person could conclude that "part and parcel of 'administering' treatment for the detoxification of persons are the functions which [Dr. Jian] performs on the Property." Association Br. at 15. While it is reasonable to apply the term "administer" to different types of medical services, it is unreasonable to do so in the case *sub judice*. The Code specifically states that a methadone treatment facility is a place "where the drug 'Methadone' or similar substances are prescribed and ad-

---

board, [this C]ourt's scope of review is limited to determining whether the zoning board committed an error of law or a manifest abuse of discretion in rendering its decision." *Cottone v. Zoning Hearing Bd. of Polk Twp.*, 954 A.2d 1271, 1275 n. 2 (Pa.Cmwlth.2008). "An abuse of discretion occurs when the findings are not supported by substantial evidence in the record. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.*, 944 A.2d 832, 838 n. 9 (Pa. Cmwlth.2008) (citation omitted).

**2.** *Richardson v. Orlowski*, 2010 WL 2825703 (D.Conn.2010); *Tomlinson v. Combined Underwriters Life Ins. Co.*, 708 F.Supp.2d 1284 (N.D.Okla.2010); *Raymond v. Park Terrace Apartments, Inc.*, 882 A.2d 518 (Pa.Super.2005); *L.A.J. v. Dep't of Public Welfare*, 726 A.2d 1133 (Pa.Cmwlth.1999); *Commonwealth v. Wilkins*, 81 Pa. D. & C.4th 459 (Lawrence Cty., 2007), *aff'd*, 947 A.2d 835 (Pa.Super.2008); *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861 (7th Cir. 2010).

ministered." The Code refers only to the administration of a drug, not the administration of any treatment or medical services for opioid addicts.

■ The Association noted that the Zoning Officer's interpretation of the Code is entitled to deference, and the ZHB should have accepted his determination unless it was found to be clearly erroneous. *McIntyre v. Bd. of Supervisors of Shohola Twp.*, 150 Pa.Cmwlth. 15, 614 A.2d 335 (1992). The problem with this argument is that the record indicates that Dr. Jian was administering Buprenorphine from the Property prior to October of 2009, but that he stopped giving out the drug after that time. Reproduced Record (R.R.) at 107a. In fact, the Zoning Officer in his testimony, when asked if he had any evidence that Dr. Jian administered any drugs at his office, stated: "No, I cannot say I do." R.R. at 33a. He further stated: "The violation was based on the prescribing of drugs and does not fit the medical description either, which is what his previous occupancy was for." R.R. at 34a. Regardless of whether the ZHB used the words "clearly erroneous" in making a determination different from that of the Zoning Officer, it is clear from the record that the Zoning Officer had no evidence that Buprenorphine was being administered from the Property at the time the occupancy permit was granted, and that the Zoning Officer misinterpreted the Code because he believed that the only violation was that Dr. Jian was prescribing Buprenorphine. "The role of the zoning hearing board is that of fact-finder. A reviewing court may not substitute its judgment for that of the zoning hearing board; rather, the court is bound by the zoning hearing board's determinations of witness credibility and evidentiary weight." *In re Rural Route Neighbors*, 960 A.2d 856, 860 (Pa. Cmwlth.2008) (citation omitted). Since

there is substantial evidence to support the ZHB's determination, the ZHB did not err as a matter of law or abuse its discretion in determining that Dr. Jian was not administering Buprenorphine to his patients.

■ The Association also argues that the un-rebutted testimony of record established that the facility provides treatment to opioid addicted individuals, and that the treatment Dr. Jian provides was to aid in the treatment, maintenance, and detoxification of addicted persons. Further, it argues that since the ZHB determined that Buprenorphine is a substance similar to methadone, Dr. Jian's practice satisfied all of the necessary requirements to be deemed a methadone treatment facility, as defined by the Code. Finally, the Association argues that the ZHB and courts are authorized to interpret the word "and" to mean "or" in order to ascertain and effectuate the legislative intent.

This Court has, in certain circumstances, interpreted the word "and" in a statute to mean "or." *See Readinger v. Workers' Comp. Appeal Bd. (Epler Masonry)*, 855 A.2d 952 (Pa.Cmwlth.2004); *McIntyre*. The Association contends that the ZHB interpreted "and" as mandatory, which was contrary to the Zoning Officer's determination and established case law. However, the Zoning Officer testified that he would agree that to be defined as a methadone treatment facility under the Code, a person would not only have to prescribe the drug at his or her office, the person would also have to administer it. R.R. at 33a. He further testified that he acknowledges that Buprenorphine needs to be prescribed *and* administered. R.R. at 37a. While the courts have, at times, interpreted "and" to mean "or," this Court will not do so in the present case, but will defer to the reasoned judgment of the ZHB.

Moreover, there is substantial evidence that Dr. Jian's practice is more like a

medical office than a methadone treatment facility. Neil Capretto, D.O. (Dr. Capretto), the medical director at Gateway Rehabilitation Center and an expert witness, testified that methadone treatment centers require patients to come to the facility every day. R.R. at 54a. Dr. Jian's addiction patients come in only a few times a month for evaluation. R.R. at 48a. According to Dr. Capretto, methadone treatment facilities see between 500–700 people per day between 6:00 a.m. and 8:30 a.m., and the medication is given to the patients on site. R.R. at 54a. Dr. Jian is relegated by law to treating only 100 patients altogether at any given time. R.R. at 40a. Dr. Jian also treats patients who are not opioid addicts, including individuals who were patients of his OB/GYN practice. R.R. at 38a–39a. Although there is some concern about safety issues and the potential trouble opioid addicts could cause, there is no evidence that any of Dr. Jian's patients are causing trouble for any of the tenants of the Property. Therefore, there is substantial evidence to support the ZHB's finding that Dr. Jian's practice is a medical office and not a methadone treatment facility. The ZHB did not err as a matter of law or abuse its discretion in making its determination.

For the reasons stated above, the order of the trial court is affirmed.

### ORDER

AND NOW, this 4th day of May, 2011, the September 24, 2010 order of the Court of Common Pleas of Allegheny County is affirmed.