**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Trevor LEWIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 14, 2006.

Filed Nov. 8, 2006.

Charles F. Smith, Jr., Allentown, for appellant.

James B. Martin, Asst. Dist. Atty., Allentown, for Com., appellee.

BEFORE: ORIE MELVIN, BOWES and TAMILIA, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Trevor Lewis, appeals from the judgment of sentence[1] imposed following his convictions in a jury trial for aggravated assault and simple assault.[2] On appeal, he challenges the sufficiency and weight of the evidence as well as the discretionary aspects of sentencing. After review, we affirm.

¶ 2 The relevant facts were accurately summarized by the trial court as follows.

[Appellant] and the victim, [Stephanie] Jones, had an approximately two year relationship. In July of 2003, Ms. Jones weighed about 180 pounds and was 5'6" tall; [Appellant] was about 230 pounds and 6' tall. They co-habited with the victim's cousin, the cousin's boyfriend and victim's children in New Jersey, until the incident of July 22, 2003. The couple fought numerous times throughout their relationship. The fights consisted of loud, raised voices and were never physical except when [Appellant] restrained Ms. Jones. Further, as of July, 2003 their relationship was deteriorating. Ms. Jones believed they needed some time to relax and talk.

On July 22, 2003 [Appellant] and [Ms.] Jones, along with her two children[,] were guests at the KOA Campgrounds in New Tripoli, Lehigh County, Pennsylvania, on a vacation. They arrived Sunday, July 20 and were enjoying their vacation. On the morning of July 22, 2003, Ms. Jones and her children woke up and noticed [Appellant] was not in the cabin. Upon returning from the bathhouse, [Appellant] was still not present at the cabin. While Ms. Jones and her children were leaving for a walk she noticed [Appellant] walking towards the cabin. As the [Appellant] approached, it "looked like something was wrong with him." Ms. Jones sent her children to the playground so she and [Appellant] could talk.

[Appellant] and Ms. Jones talked about their relationship. [Appellant] brought up another man, "Nate". [Appellant] claimed Nate called and told him Ms. Jones and he had been having sexual relations. [Appellant] insisted upon having the conversation about Nate, and their discussion became escalated, and they moved the argument inside [ ] the cabin.

Once inside the cabin, the argument continued. [Appellant] stood closer to the door, with his back towards it, while Ms. Jones stood facing the door. [Appellant] continued to ask Ms. Jones if she loved him and if she was cheating on him. "I was saying, no, no. And I remember saying something like you know why are you asking me these questions are—do you have something to tell me? You know, is there something you need to tell me? Are you cheating on me? You know, and he didn't answer that question, he just wanted to know if I was cheating on him and I just kept yelling no. And the next thing I knew he was punching me in the eye." [Appellant] punched Ms. Jones with a closed fist in her left eye, and

---

1. Although Appellant purports to appeal from the order denying his post-sentence motions, an appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions. *Commonwealth v. Dreves,* 839 A.2d 1122, 1125 n. 1 (Pa.Super.2003)(*en banc*). We have corrected the caption accordingly.

2. 18 Pa.C.S.A. §§ 2702(a)(1) and 2701(a)(1), respectively. Appellant was also found guilty by the trial court of the summary offense of harassment. 18 Pa.C.S.A. § 2709(a)(1).

continued to yell. At this point the victim was dazed, dizzy and could not see. [Appellant] hit the victim in the stomach and she sat down on the double bed in the cabin.. [Appellant] punched the victim in the face with a closed fist again, this time on the right side of her face, on her mouth. The victim was bleeding and in pain. [Appellant] gave the victim a towel, and [Appellant] left in the victim's car. When Ms. Jones got up from the bed she opened the door and her children were there, on the porch. The children were visibly upset by the sight of their mother. Ms. Jones has no further memory until she woke up in the hospital.

Two campers reported a domestic dispute to the office of the KOA. Ms. Tapper, co-owner of the KOA campground, was in the office working at the time. [Ms.] Tapper immediately ran outside and heard yelling and heard "hitting" · noises, as well as Ms. Jones begging for him to stop. [Ms.] Tapper yelled that the cops were on the way, [Appellant] immediately exited the cabin. [Appellant] told [Ms.] Tapper the victim stabbed him, and he needed to go to the hospital, and immediately left in the car. Ms. Tapper entered the cabin to tend to the victim until the ambulance arrived. There was blood everywhere, the victim's face was extremely swollen, she had a split lip and a lump on her forehead. The victim was removed from the cabin by a stretcher and into the ambulance by the paramedics.

En route to the hospital the EMT paramedics classified the injury as life threatening because of the possibility of her airway closing up and not being able to breathe and because of the possibility of broken facial bones. The victim was given oxygen, and advanced life support was requested and administered in the ambulance.

Soon after arriving at the Lehigh Valley Hospital Emergency Room, Dr. Geoffrey Gaddis Hallock, a plastic surgeon, examined the victim. Dr. Hallock testified that she was in guarded condition because she was on a ventilator for breathing, and she was not conscious. The victim had approximately nine lacerations on her face, outside her lip, inside the mouth and inside the lips. In addition to being ventilated, the victim also had an oral gastric tube, a phenol and morphine drip through an intravenous line, and the urine output was monitored by using a Foley catheter.

The same day, Dr. Hallock repaired the multiple cuts on the victim's face and mouth. Most of her lacerations went down to the facial muscles and bones, approximately "a half an inch or so." The victim remained in the hospital for five days. She was on the ventilator three days. She also had an infection after the surgery in the area of one of the lacerations on her cheek. The victim had a follow up appointment after she was discharged from the hospital to remove the sutures and attend to the infection.

When the victim was released from the hospital and returned home, she could not take care of herself. Her cousin cared for her for about one month, and her son stayed with relatives for a little while. Ms. Jones was finally able to return to work three months later. She still has scars from the incident. Her children remain emotionally and mentally scarred.

After the incident occurred, [Appellant] fled the scene in the victim's car. [Appellant] left the car at a rest stop and called a cab. [Appellant] eventually fled to Georgia. [Appellant] was using a different name while living and working in Georgia, Rashid Samad Powell. Upon [Appellant]'s fleeing the camp-

ground and police arriving, Trooper Canepa called his supervisor for both a warrant for [Appellant] as well as to obtain authority to extradite. [Appellant] was entered into the NCIC database. [Trooper] Canepa unsuccessfully attempted to contact [Appellant] and notify him of the warrant. Every thirty to ninety days the [Appellant]'s name was run through the criminal investigation computers to find out if he had been arrested in another jurisdiction, the [trooper] would also contact the victim to find out if she had any contact with [Appellant]. Finally, after running out of directions and finding no leads, [Trooper] Kirk Vanim forwarded the information to the Fugitive Apprehension Unit, in February 2004. Ultimately, [Appellant] was picked up in Georgia by the Georgia Highway Patrol, and brought back to Pennsylvania approximately July 27, 2004.

Once [Appellant] arrived in Pennsylvania, he was taken to the Bethlehem State Police Barracks. He was interviewed by [Trooper] Canepa. [Appellant] provided a signed, written statement.

Trial Court Opinion, 9/26/05, at 3–8 (footnotes and citations to the record omitted).

¶ 3 On April 13, 2005, Appellant was convicted of the aforementioned charges and, on May 19, 2005, was sentenced to ten to twenty years' imprisonment. On May 27, 2005, Appellant filed a timely Post–Sentence Motion, which included a Motion for Reconsideration of Sentence and a Motion for New Trial. On September 26, 2005, the trial court denied the post-sentence motions. This timely appeal followed.[3]

¶ 4 Appellant challenges the sufficiency and weight of the evidence to sustain the conviction for aggravated assault and further seeks allowance of appeal from the discretionary aspects of his sentencing.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a [Appellant]'s guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Kim,* 888 A.2d 847, 851–52 (Pa.Super.2005), appeal denied, 587 Pa. 721, 899 A.2d 1122 (2006) (quoting *Commonwealth v. Lehman,* 820 A.2d 766, 772 (Pa.Super.2003) (citations omitted)). Furthermore, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Gooding,* 818 A.2d 546, 549 (Pa.Super.2003), appeal denied, 575 Pa. 691, 835 A.2d 709 (2003).

¶ 5 "A person is guilty of aggravated assault if he … attempts to cause serious bodily injury intentionally, knowingly, or recklessly under circumstances manifesting an extreme indifference to the value of human life." 18 Pa.C.S.A.

---

**3.** Appellant was ordered to file a Rule 1925(b) statement on October 31, 2005, and filed said statement on November 14, 2005. The trial court filed a Rule 1925(a) opinion on February 21, 2006.

§ 2702(a)(1). The term "serious bodily injury" is defined by statute as "[b]odily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Aggravated assault does not require proof that serious bodily injury was inflicted but only that an attempt was made to cause such injury. *Commonwealth v. Rosado*, 454 Pa.Super. 17, 684 A.2d 605, 608 (1996). Where the victim does not sustain serious bodily injury, the Commonwealth must prove that the appellant acted with specific intent to cause serious bodily injury. *Commonwealth v. Dailey*, 828 A.2d 356, 359 (Pa.Super.2003). The Commonwealth may prove intent to cause serious bodily injury by circumstantial evidence. *Commonwealth v. Rightley*, 421 Pa.Super. 270, 617 A.2d 1289, 1295 (1992). In determining whether the Commonwealth proved the Appellant had the requisite specific intent, the fact-finder is free to conclude "the accused intended the natural and probable consequences of his actions to result therefrom." *Rosado, supra,* 684 A.2d at 608. "[A] determination of whether an appellant acted with intent to cause serious bodily injury must be determined on a case-by-case basis." *Dailey, supra,* at 360.

> An intent is a subjective frame of mind, it is of necessity difficult of direct proof[.] We must look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared to his eyes[.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

*Commonwealth v. Alford,* 880 A.2d 666, 671 (Pa.Super.2005)(quoting *Commonwealth v. Gruff,* 822 A.2d 773, 776 (Pa.Super.2003), appeal denied, 581 Pa. 672, 863

A.2d 1143 (2004)). Moreover, depending on the circumstances "even a single punch may be sufficient." *Dailey, supra,* at 360 (collecting cases).

¶ 6 Appellant contends that the evidence failed to establish that the victim suffered serious bodily injury or that he acted with the intent to cause such injury.

◼ ¶ 7 Upon consideration of the record in the light most favorable to the Commonwealth, we find that the evidence was clearly sufficient to sustain Appellant's conviction for aggravated assault. The victim's testimony reveals that Appellant was angered by suspicion of the victim's infidelity, and he delivered at least three closed-fist punches to the victim's body, one to the stomach and two to her face. The first punch to the face caused the victim's left eye to immediately swell shut and rendered her dazed. The second punch to her face opened a bloody gash. Appellant only ceased his attack upon being informed by the camp owner that the police were on their way. Furthermore, Dr. Geoffrey Hallock, a plastic surgeon, testified that he first encountered the victim in the emergency room in an unconscious guarded condition, having been intubated and on a ventilator. He described her injuries as consisting of multiple swollen areas on her face and neck and multiple cuts and lacerations on her face and inside of her mouth. Specifically, she had nine lacerations to her face and mouth and chip fractures to her cheekbone. Most of the cuts penetrated the muscle tissue down to the facial bones.

¶ 8 The victim's treatment involved the placement of a gastric tube in her mouth to drain blood from her stomach to prevent aspiration pneumonia, which was described as a "life threatening problem," N.T. Volume II, 4/12/2005, at 183, suturing of her wounds, and the administration of

pain and sedation medication through an intravenous drip. She was hospitalized for five days and was on Oxycontin for the pain for a couple of weeks after her discharge. The victim's cousin had to care for her for about a month, and she could not eat any solids until the stitches were removed. The victim missed work for about three months because of this incident and at the time of trial still had small scars on her face.

¶ 9 Unlike in *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978), wherein our Supreme Court concluded that the evidence that the appellant delivered one punch to the victim's head, which resulted in a broken nose, and then walked away was insufficient to sustain his conviction for aggravated assault, the instant circumstances are significantly different. Here, there was evidence that Appellant was disproportionately larger and stronger than the victim [4] and only refrained from continuing his attack upon the victim and fled the scene when he became aware of the approach of the police. Moreover this is not a single punch case. Rather, the evidence of nine lacerations supports an inference that Appellant delivered additional punches to the victim's face beyond the three that the victim could remember after she became dazed from the first few punches. *See Dailey, supra,* (finding defendant's two closed-fist punches to the victim's head, rendering the victim dazed and helpless, after which defendant approached the victim aggressively, ready to deliver another punch, sufficiently showed an intent to inflict serious bodily injury under 18 Pa.C.S.A. § 2702(a)(2)). Furthermore, there was testimony presented that the victim's injuries did create a substantial risk of death. Specifically, the emergency medical technician testified

that he assessed the injuries as life threatening due the severe facial swelling, which created the possibility of her airway closing up, and the threat of broken facial bones migrating to the brain. N.T. Vol. II, 4/12/2005, at 108, 111. Accordingly, when viewed in the light most favorable to the Commonwealth, we conclude the evidence is clearly sufficient to establish that Appellant caused serious bodily injury or intended to inflict serious bodily injury to Ms. Jones.

■■■■ ¶ 10 Appellant next submits that the verdict was not supported by the weight of the evidence.

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Hunzer,* 868 A.2d 498, 506–507 (Pa.Super.2005), appeal denied, 584 Pa. 673, 880 A.2d 1237 (2005). "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." *Commonwealth v.*

---

**4.** Appellant was a muscularly built six foot tall man weighing approximately 230 pounds, while his female victim was five feet six inches tall and weighed 180 pounds.

*Rossetti,* 863 A.2d 1185, 1191–1192 (Pa.Super.2004), *appeal denied,* 583 Pa. 689, 878 A.2d 864 (2005). We are also mindful that "[q]uestions concerning inconsistent testimony ... go to the credibility of witnesses." *Commonwealth v. DeJesus,* 580 Pa. 303, 311, 860 A.2d 102, 107 (2004). "This Court cannot substitute its judgment for that of the jury on issues of credibility." *Id.*

■ ¶ 11 Appellant's argument in this regard does not articulate a viable weight claim. He merely asserts that "a complete review of the evidence should show that, while he admittedly was involved in a simple assault against Ms. Jones, [ ] he at no time intended to or did in fact commit an aggravated assault against her." Appellant's brief, at 16. The argument which Appellant makes in his brief is nothing more than a sufficiency challenge.

■ ¶ 12 We remind Appellant that when reviewing a weight of the evidence claim, "an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Commonwealth v. Smith,* 580 Pa. 392, 399, 861 A.2d 892, 896 (2004). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Hunzer,* 868 A.2d at 507. We also observe that "[i]n criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact, [which] is free to believe all, part, or none of the evidence." *Commonwealth v. Williams,* 578 Pa. 504, 512, 854 A.2d 440, 445 (2004) (citation omitted).

■ ¶ 13 It was the function of the jury as the finder of fact to evaluate the evidence and determine the weight it should be given. As the trial court reasoned in ruling on this claim, "[i]t was apparent to me ... that the testimony presented at trial was reliable and of sufficient weight for the jury to return the verdict of guilty. As such, the [Appellant's] allegation that the verdict was against the weight of the evidence is without merit." Trial Court Opinion, 9/26/05, at 14. In this case, the Commonwealth presented eight witnesses, including the victim. The jury evidently found the Commonwealth's witnesses credible and chose not to believe Appellant's version of the events. Based on our review, we find no abuse of the trial court's discretion in refusing to award a new trial based on the weight of the evidence.

■ ¶ 14 We now turn to Appellant's issue involving the discretionary aspects of his sentence. At the outset, we must note that the trial court is vested with the sound discretion to determine sentence since it is in the best position to consider the defendant's character, display of remorse, defiance or indifference and the overall effect and nature of the crimes of which he was convicted. *Commonwealth v. Begley,* 566 Pa. 239, 780 A.2d 605 (2001). We will grant an appeal challenging the discretion of the sentencing court only·where the appellant has advanced a colorable argument that the sentence is inconsistent with the Sentencing Code or "contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Martin,* 727 A.2d 1136, 1143 (Pa.Super.1999), *appeal denied,* 560 Pa. 722, 745 A.2d 1220 (1999). Such an appeal is not a matter of right; rather, an appellant must seek permission from this Court to appeal and establish that a substantial question exists that the sentence was not appropriate under the Sentencing Code. *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002); *Commonwealth v.*

*Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987); 42 Pa.C.S.A. § 9781(b). This is accomplished by the filing of a separate concise statement pursuant to Pa.R.A.P. 2119(f), 42 Pa.C.S.A.

¶ 15 In his concise statement, Appellant asserts that his sentence of 10 to 20 years' incarceration "far exceeded the sentencing guideline range" without adequate reasons and "the sentencing court failed to properly consider all of the factors as set forth in the sentencing code as it relates to the [Appellant's] background, history, criminal record, and his overall acceptance of the responsibility for the injuries caused to the victim." Appellant's brief at 10. In essence, Appellant first contends that the reasons offered by the sentencing court did not justify a deviation beyond the guidelines. "This Court has found a substantial question exists where the sentencing court failed to provide sufficient reasons for imposing a sentence outside of the guidelines." *Commonwealth v. Robertson,* 874 A.2d 1200, 1212 (Pa.Super.2005). We also note that Appellant was sentenced to the statutory maximum for his aggravated assault conviction. 18 Pa.C.S.A. §§ 1103(2), 2702(a)(3). We shall therefore proceed to address the merits of this claim.

■ ¶ 16 The trial court had the benefit of a pre-sentence investigation report. N.T. Sentencing Hearing, 5/19/05, at 4. Prior to imposing sentence, the trial court explained that it had considered the guidelines and the nature of this particular crime including the circumstances surrounding the assault. *Id.* at 23. The trial court further took into account Appellant's lack of remorse and the recommendations of the victim, the police, and the pre-sentence investigative reporter. *Id.* at 24–25. The trial court further noted on the record that it was deviating from the guidelines for the following reasons: the violent nature of the Appellant in this case, the fact that Appellant was a fugitive from justice, Appellant's previous failure while on parole, lack of remorse and failure to take responsibility, and his being a poor candidate for rehabilitation. *Id.* at 23–26. Based on our review, we find that the trial court gave due consideration to all relevant factors and provided adequate reasons for sentencing Appellant outside of the sentencing guidelines. Accordingly, we find no abuse of its discretion in fashioning the particular sentence imposed.

■ ¶ 17 Appellant also makes an argument that the trial court failed to consider mitigating factors including his background, history, criminal record, and his overall acceptance of responsibility for the injuries caused to the victim. A claim that a sentencing court failed to consider certain mitigating factors does not raise a substantial question that the sentence is inappropriate. *Commonwealth v. Tirado,* 870 A.2d 362 (Pa.Super.2005); *see also, Commonwealth v. Urrutia,* 439 Pa.Super. 227, 653 A.2d 706, 710 (1995)(stating "an allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate. Such a challenge goes to the weight accorded the evidence and will not be considered absent extraordinary circumstances."), *appeal denied,* 541 Pa. 625, 661 A.2d 873 (1995). Moreover, because our review has found that the trial court properly considered all relevant information about Appellant for purposes of imposing sentence in this case, this claim fails.

¶ 18 Judgment of sentence affirmed.