J. A29001/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                        :           PENNSYLVANIA
                   v.                :
                                          :
DANIEL HARGROVE,               :           No. 1896 WDA 2013
                                          :
             Appellant      :

Appeal from the Judgment of Sentence, July 2, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0002069-2012

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED NOVEMBER 23, 2015**

Daniel Hargrove appeals from the July 2, 2013 judgment of sentence following his conviction of false reports to law enforcement authorities with intent to falsely incriminate another person.  We affirm.

The trial court has provided the following relevant facts:

> In July of 2008, the victim, [Jill] Cueni-Cohen, (hereinafter referred to as "Cohen"), had just returned to the United States from Switzerland as a result of the break-up of her marriage.  Cohen returned with her minor son, however she was charged with international kidnapping by her ex-husband and was looking for an attorney to represent her in connection with this charge.  She met Hargrove in a bar and explained her situation to him.  The next day Hargrove called her and told her that he could help her and they should meet.  Their attorney-client relationship almost immediately developed into a romantic relationship, which lasted for approximately three years.  At one point Cohen moved into Hargrove's home and resided with him.

After approximately three years, she became frightened of Hargrove because of his threats to harm her and her family. Hargrove would text Cohen at all hours of the day and she became fearful of his continued harassment. Cohen described him as [a] Dr. Jekyll and Mr. Hyde character and noted that when he became drunk, he would text horrible things to her. Cohen ended their relationship in August of 2011.

During the early evening of October 3, 2011, Cohen began receiving numerous text messages from Hargrove while she was at work. Hargrove wanted her to meet with him. He continued to text message her asking her to come over and meet with him. She responded to one of his text messages by saying that he was drunk and he texted back that he was not drunk and she should come over and make this assessment. Cohen, who is an avid runner was not too far from Hargrove's house and decided to go over to his house. When she arrived, she texted him and told him that she was outside and he said for her to come in and she responded that she would not come in and he would have to come outside. He started screaming and when he came out, she realized that he said that she should shoot him. These text messages began at approximately 8:47 p.m. The last text message that she received from Hargrove was shortly before midnight. After receiving the last text message from Hargrove, Cohen left and started to jog back towards her home.

Hargrove made three 911 calls, the first being at 12:18 a.m. on October 4, 2011. In the first call he told the 911 operator that his ex-fiancée was "blowing up" his phone and wanted him to come outside and he believed that she had a weapon. The second 911 call occurred at 12:34 a.m. when Hargrove was wondering whether the police were going to respond to his earlier 911 call. The final 911 call was made at 1:11 a.m. when Hargrove said that he was still receiving messages from a stalker and [they] were getting more elevated.

The police arrived at Hargrove's house at 12:36 a.m., obtained a description of Cohen, and received her phone number. When Officer Shawn Frank left Hargrove's house, he called Cohen on her cell phone and asked her to meet him and they agreed to meet at the Township Park, located on Greenfield Road. Officer Frank met her at approximately 12:56 a.m. and was with her until 1:43 a.m. At approximately 1:14 a.m., Officer Frank received a radio call indicating that Hargrove had made an additional call saying that he was receiving more text messages from Cohen. Officer Frank noted that in the eighteen minutes that he had been with Cohen, she had not used her phone nor did she attempt to send any text messages. Officer Frank noted that the time their meeting ended at 1:43 a.m., she had not used her phone nor had she made any text messages.

Hargrove testified on his own behalf and stated that some time during the late night of October 3 and the early morning of October 4, his phone went dead and he had placed it in the charger and that he had received so many text messages that his phone was refusing to accept any more. It was only after his phone had recharged that the messages came flooding onto his phone.

Trial court opinion, 6/4/15 at 3-5.

Appellant was charged with, **_inter alia_**,[1] false alarm to agency of public safety and false reports to law enforcement authorities with the intent of incriminating another person.[2] A non-jury trial was held beginning on April 9, 2013. Appellant was convicted on April 11, 2013, of false reports

---

[1] Appellant was facing several other charges through a separate criminal information, which is not before us for the purposes of this review.

[2] 18 Pa.C.S.A. §§ 4905(a) and 4906(a), respectively.

and was acquitted of false alarms to agencies of public safety. On July 2, 2013, appellant was sentenced to one year of probation and was prohibited from having any contact with Cohen. Appellant was further ordered to attend batterer's intervention. On July 11, 2013, appellant filed timely post-sentence motions which were denied on October 29, 2013. Appellant filed a timely notice of appeal to this court on December 2, 2013.[3] The trial court ordered appellant to submit a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant complied with this order on April 21, 2014. The trial court has filed an opinion.

Appellant raises the following issue for our review:

> Whether there was insufficient evidence to prove the crime of false reports to law enforcement when the Commonwealth failed to prove that Appellant gave false information, namely that he was being threatened and/or harassed by Jill Cueni-Cohen?

Appellant's brief at 4.

When reviewing a claim of the sufficiency of the evidence, we are held to the following standard:

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact finder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is

---

[3] November 29, 2013, was the day after Thanksgiving, which has been designated as a court holiday. Therefore, appellant's filing deadline was extended to the next business day, which was December 2, 2013. **See** 1 Pa.C.S.A. § 1908.

circumstantial rather than direct so long as the combination of evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

*Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa.Super. 2013) (citations omitted).

Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa.Super. 2011) (citations omitted).

The credibility and weight of the evidence are both matters that are in the sole purview of the fact-finder. Specifically, when considering whether the evidence was sufficient to prove each element of a charge beyond a reasonable doubt, we cannot assume the task of weighing evidence and making independent conclusions of fact. *Commonwealth v. Lewis*, 911 A.2d 558, 563 (Pa.Super. 2006) (citations omitted). "Any doubts regarding [an appellant's] guilt may be resolved by the fact-finder unless the evidence

is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.*

The statute at issue provides that a "person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree." 18 Pa.C.S.A. § 4906(a). This court has established the four elements that the Commonwealth must prove beyond a reasonable doubt in order to convict a defendant of false reports--implicating another: "(1) the defendant must have made the statement to a law enforcement officer; (2) the defendant's statement must be false; (3) the defendant must know the statement is false; and (4) the defendant must intend to implicate another." *Commonwealth v. Soto*, 650 A.2d 108, 110 (Pa.Super. 1994).

Here, the first two elements are not in dispute. The Commonwealth met the first prong under *Soto* by presenting evidence that appellant told the first 911 operator and Sergeant Frank that he was afraid that Cohen may have a weapon. (Notes of testimony, 4/9/13 at 12, 51.) The second *Soto* prong was satisfied when the police determined that Cohen was unarmed. (*Id.* at 53.) Whether the Commonwealth met its burden in proving the third prong of Soto is strictly a matter of credibility, which is within the exclusive purview of the trial court, as fact-finder. Here, the Commonwealth presented Cohen's testimony, which the trial court found credible, that she is opposed to guns, and that she communicated her

opposition to guns in the past to appellant. (***Id.*** at 82-83.) Finally, the Commonwealth met the fourth prong by establishing through its case-in-chief that appellant intended to implicate Cohen. Appellant testified that he felt threatened by the numerous text messages he received from Cohen and that he believed that Cohen may have had a weapon. (***Id.*** at 150.) The trial court noted multiple times that it found appellant's testimony to be lacking credibility. (***See*** trial court opinion, 6/4/15 at 8.)

As noted above, we are bound by the trial court's credibility determinations, as determining credibility is within the sole purview of the fact-finder. Credible testimony from the 911 operators who answered appellant's calls, Cohen, and Sergeant Frank provide ample factual support within the record for the trial court's determination, which cannot be disturbed. ***See Stokes***, ***supra*** at 649.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/23/2015</u>