**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARK EDWARD NEBERDOSKY JR., | |
| Appellant | No. 1590 MDA 2015 |

Appeal from the Judgment of Sentence July 21, 2015
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0004466-2014

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STEVENS, P.J.E.[*]

DISSENTING MEMORANDUM BY STEVENS, P.J.E.:**FILED NOVEMBER 18, 2016**

At Appellant's criminal trial, the jury viewed a security video of Appellant stealing beer from the West Nanticoke Grove.  Taken from a distance, the video captures a circumspect Appellant scanning in all directions before he looks up in the direction of the surveillance camera, holds this position momentarily, and leaves the scene.  In its exclusive role as finder of fact, the jury interpreted Appellant's fixed gaze as a reaction to spotting the camera, and it determined that his motive to return and confiscate potentially incriminating security equipment was, therefore, established.

---

[*] Former Justice specially assigned to the Superior Court.

Based on its observation of the same video, however, the Majority substitutes its own finding of fact for that of the jury, overrides the jury's exclusive role as finder of fact, and concludes the video did not allow the inference that Appellant saw what he at least suspected was a camera. Because the jury could not see Appellant's eyes in the video and heard no testimony as to the size of the surveillance camera, it could not reasonably infer that he spotted the camera, the Majority opines. It follows, the Majority concludes, that the Commonwealth's case fails for insufficient evidence that Appellant "*knew*" he was being recorded.

I find the Majority's decision problematic for two reasons. First, it fails to assess the evidence in a light most favorable to the verdict winner as required by our standard of appellate review.[1] On the question of whether

_____

[1] "A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of *wholly circumstantial evidence.* Moreover, in applying the above test, the entire record must be evaluated and

*(Footnote Continued Next Page)*

Appellant saw the surveillance camera, Trooper Brogan's narration during the video playback provided a fair account of Appellant's movements when she testified "when you look at the video, you saw it, he actually, when he's leaving, he pauses. And that's -- right then and there, he sees the camera…." N.T. 7/21/15 at 76. Setting aside her conclusions that Appellant actually saw the camera and knew he was caught, her testimony otherwise accurately describes a departing Appellant as pausing when he looks in the direction of the security camera.[2]

Importantly, the jury viewed the video for itself while the trooper testified, and it was free to reject her narration based on its own

*(Footnote Continued)* _____

> all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa.Super. 2014) (emphasis added), "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Antidormi*, 84 A.3d at 756 (citation omitted). "Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Id.* (citation omitted). To reiterate, credibility and weight of the evidence are both matters that are in the sole purview of the jury. Specifically, when considering whether or not the evidence was sufficient to prove each element of each charge beyond a reasonable doubt, we cannot assume the task of weighing evidence and making independent conclusions of fact. *Commonwealth v. Lewis*, 911 A.2d 558, 563 (Pa.Super. 2006) (citations omitted).

[2] The trial court's account of the evidence likewise states that the individual depicted in the surveillance video "looks up and sees a video surveillance system. The video shows [Mr. Neberdosky] looking directly at the video surveillance system as he hustled away." Trial Court Opinion, at 4.

observations. However, it clearly agreed that Appellant's pause represented a lawbreaker's natural, anxious reaction to spotting a surveillance camera pointing his way. In my view, this was a reasonable inference from the videographic evidence, and the Majority usurps the fact-finding role of the jury by deciding that Appellant's actions could not be understood to mean what the jury interpreted them to mean.[3]

Second, the Majority appears to hold that a conviction depended upon proof that Appellant *knew* or *realized* he was being recorded. **See** memorandum decision at 5. To place a burden upon the prosecution to establish Appellant's certitude about being recorded exceeds what is sufficient to prove his motive to return to the crime scene, namely, evidence that he *suspected* a security camera captured his crime. In this respect, the video depiction of Appellant's gaze up at the security camera provided the necessary and sufficient basis from which to infer he possessed a reason to suspect he was under electronic surveillance.

_____

[3] For example, the Majority discounts the significance of Appellant's turning his head and looking in the direction of the security camera because he "had just perused the whole pavilion; he was bound to eventually look in the direction of the security camera." Memorandum decision at 6. Even assuming Appellant was, in fact, bound to look in all directions still does not diminish the reality that he thus placed himself in the position to see and identify the security camera. Moreover, the jury observed Appellant's entire perusal of the grounds during the course of his crime, but it clearly discerned something distinctive about the look in question that led it to conclude he suspected he may have been caught on film.

Here, a security video depicted Appellant fixing his attention in the direction of the camera as he was leaving the grove with stolen beer in hand. Less than forty-eight hours later, the security equipment required to play the surveillance recording was also stolen. Acting in its exclusive role as finder of fact, the jury viewed the video and determined that Appellant's conduct while looking straight in the direction of the camera established his awareness that he may have been captured on video. In light of the totality of such circumstances, which included Appellant's unique motive to return to the grove and confiscate potentially incriminating video equipment, I would deem the evidence sufficient to support the jury's verdict of guilt entered below. Accordingly, I dissent.