J-S09024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SCOTT JAMES LAUDERBAUGH | : | |
| | : | |
| Appellant | : | No. 1000 WDA 2018 |

Appeal from the Judgment of Sentence Entered June 13, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003193-2017

BEFORE:   PANELLA, P.J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 15, 2019**

Scott James Lauderbaugh appeals from his judgment of sentence, entered in the Court of Common Pleas of Erie County, after a jury convicted him of aggravated assault,[1] recklessly endangering another person ("REAP"),[2] resisting arrest,[3] fleeing or attempting to elude police officer,[4] and driving while operating privilege was suspended.[5]  Upon careful review, we affirm.

_____

[1] 18 Pa.C.S.A. § 2702(a)(3).

[2] 18 Pa.C.S.A. § 2705.

[3] 18 Pa.C.S.A. § 5104.

[4] 75 Pa.C.S.A. § 3733(a).

[5] 75 Pa.C.S.A. § 1543(b)(1).

*   Retired Senior Judge assigned to the Superior Court

- 1 -

The trial court set forth the facts of this matter as follows:

In the early morning hours of September 3, 2017, [Lauderbaugh] and one passenger were driving on PA Route 20 in North East Township, Erie County, when they were observed driving erratically by on-duty Pennsylvania State Police Trooper Adam Gadsby, and his partner, Trooper James Webber, who were following behind the vehicle. The troopers pulled the vehicle over to investigate. Initially, [Lauderbaugh] was cooperative, however, as it became apparent Lauderbaugh had given Trooper Webber false identification and was driving with a suspended license, [Lauderbaugh] and his passenger fled the scene by vehicle and a high-speed chase ensued.

After a mile or two, [Lauderbaugh] pulled over and fled from the vehicle. Trooper Webber secured the passenger while Trooper Gadsby chased after [Lauderbaugh]. As they ran through a poorly lit yard, [Lauderbaugh] tripped over a low fence and fell to the ground. Trooper Gadsby observed the fall, but not the fence. As he closed in on [Lauderbaugh], he too tripped over the fence and landed near [Lauderbaugh]. The two struggled for three or four minutes before Trooper Webber arrived to help subdue [Lauderbaugh].

In the police recording of the incident, Trooper Gadsby can be heard shouting in desperate tones for Trooper Webber's help. As Trooper Webber arrived at the scene of the struggle, he observed Trooper Gadsby and [Lauderbaugh] wrestling on the ground "pretty intensely." Trooper Webber engaged in the struggle, and it took two or three more minutes to overpower [Lauderbaugh]. During this time, the troopers testified that [Lauderbaugh] was thrashing, flailing, kicking, and striking about with his hands. Both troopers' Tasers and radios were knocked away. Ultimately, it took hand-to-hand combat and pepper spray to bring [Lauderbaugh] under control.

Trooper Gadsby testified that when he tripped over the fence, his neck struck a tree stump just above the collarbone. He said the wind was knocked out of him, and his vision blurred, but he continued to apprehend [Lauderbaugh]. At one point during the struggle, [Lauderbaugh] wrapped his legs around Trooper Gadsby's neck as "with a wrestling move." After the incident, the troopers were examined at a local hospital. They took an x-ray of Trooper Gadsby's left wrist, and a CT scan of his neck.

> Trooper Gadsby testified that immediately after the incident he was short of breath, had pain in his neck, observed scratches and cuts to his arm, his uniform shirt was torn and bloody, and he had sharp pain and swelling in his left wrist and forearm. He was prescribed steroid medication for pain and numbness in his arm an[d] fingers for approximately three weeks after the incident and was unable to work.

Trial Court Opinion, 8/28/18, at 2-3 (internal citations omitted).

On April 12, 2018, a jury found Lauderbaugh guilty of the above offenses. On June 13, 2018, the trial court sentenced Lauderbaugh to an aggregate term of 58 to 116 months' confinement, followed by eight and one-half years' probation. On July 10, 2018, Lauderbaugh filed a timely notice of appeal. On July 13, 2018, the trial court ordered Lauderbaugh to file a Pa.R.A.P. 1925(b) concise statement of errors complained on appeal and Lauderbaugh timely complied.

On appeal, Lauderbaugh raises the following issue on appeal: "Whether the Commonwealth failed to present sufficient evidence to find [] Lauderbaugh guilty beyond a reasonable doubt of aggravated assault?" Brief of Appellant, at 3.

Lauderbaugh contends the evidence was insufficient to sustain his conviction for aggravated assault, arguing the Commonwealth failed to prove the necessary criminal intent beyond a reasonable doubt.

In reviewing the sufficiency of the evidence, this Court applies the following standard:

> [W]e must view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to a crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa. Super. 2013) (internal quotation marks and brackets omitted). Moreover, when "reviewing the sufficiency of the evidence, the Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions, they may not be disturbed." *Id*.

The Crimes Code defines aggravated assault, in relevant part, as follows:

### § 2702. Aggravated Assault

(a) Offense defined.-- A person is guilty of aggravated assault if he:

. . .

(3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees, or other persons enumerated in subsection (c), in the performance of duty.

18 Pa.C.S.A. § 2702(a)(3). The term "officer" as referenced in section 2702(a)(3) includes police officers. 18 Pa.C.S.A. § 2702(c)(1).

Lauderbaugh avers the evidence introduced by the Commonwealth failed to establish that he acted "intentionally, knowingly, or recklessly in causing the injuries to Trooper Gadsby."[6] Brief of Appellant, at 7.

- 4 -

Specifically, our Crimes Code states that a person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstance, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1). To prove aggravated assault against a police officer "[t]he Commonwealth need not establish that the [officer] actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth established an attempt to inflict serious bodily injury." *Commonwealth v. Richardson*, 636 A.2d 1195, 1196 (Pa. Super. 1994). This intent "may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." *Commonwealth v. Brown*, 23 A.3d 544, 560 (Pa. Super. 2011). For an aggravated assault, an attempt is properly found when an "accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005).

Additionally, we have previously held that:

---

[6] The subsection under which Lauderbaugh was convicted does not criminalize reckless conduct and, instead, only proscribes acts under section 2702(a)(3) that are "knowing" or "intentional."

[T]he fact-finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom. A determination of whether an appellant acted with an intent to cause seriously bodily injury must be determined on a case-by-case basis.

An intent is a subjective frame of mind, it is of necessity difficult of direct proof[.] We must look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared in his eyes[.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

*Commonwealth v. Lewis*, 911 A.2d 558, 564 (Pa. Super. 2006) (internal citations and quotations omitted).

Viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, we conclude the evidence supports Lauderbaugh's conviction for aggravated assault. Lauderbaugh fled in his vehicle after a high-speed pursuit by police officers, and, after one unsuccessful attempt to subdue Lauderbaugh with a Taser, the pursuing Trooper Gadsby fired a second Taser cartridge at the still-fleeing Lauderbaugh in a dimly-lit backyard. N.T. Jury Trial, 4/12/18, at 72-73. Trooper Gadsby observed Lauderbaugh "flinch" as though the Taser struck Lauderbaugh and immediately drop to the ground. *Id*. As Trooper Gadsby approached Lauderbaugh, he tripped over a fence - - approximately one or two feet high - - and struck his neck on a tree stump as he landed. *Id*. at 77. Despite blurred vision and difficulty breathing, Trooper Gadsby issued verbal commands to Lauderbaugh, who remained on the ground next to the trooper. Lauderbaugh failed to comply with the trooper's

commands and, instead, Lauderbaugh closed his legs around Trooper Gadsby's neck "as if in a wrestling move." *Id.* at 78.

The trooper extricated himself from Lauderbaugh's grip, at which time Lauderbaugh "kick[ed] with his feet trying to push away" and grabbed at Trooper Gadsby's uniform. *Id.* at 79. Trooper Gadsby struggled alone with the still "kicking and flailing" Lauderbaugh for several minutes, since Lauderbaugh knocked loose Trooper Gadsby's microphone, making him unable to call for assistance. *Id.* at 78. Trooper Webber was able to hear Trooper Gadsby's screams for assistance and entered the backyard to assist him. Trooper Webber observed Lauderbaugh "wrestling" or "in a fight" with Appellant "pretty intensely." *Id.* at 37, 40. Trooper Webber attempted to Tase Lauderbaugh four times before Lauderbaugh's "kicking and swinging" knocked the Taser from his control. *Id.* at 38-39. It took Troopers Webber and Gadsby several minutes of struggling with Lauderbaugh before the two could place him under arrest and take him into custody.

In Lauderbaugh's struggle with Trooper Gadsby, he knocked away the trooper's Taser, tore open the trooper's uniform shirt and, while grabbing at the trooper's duty belt, dislodged magazines for his service weapon. *Id.* at 78, 81, 82. Trooper Gadsby broke several vertebrae from falling while pursuing Lauderbaugh. *Id.* at 87. Further, Trooper Gadsby had to take steroid medication for numbing in his arms and tingling in his fingers. *Id.* at 92. The injuries Trooper Gadsby suffered from his violent struggle with Appellant forced him to miss two months of work. *Id.*

In light of the evidence before the trial court, a jury could have reasonably found Lauderbaugh guilty beyond a reasonable doubt. Lauderbaugh mischaracterizes the intent requirements to be convicted under section 2702(a)(3). The Commonwealth was not required to demonstrate actual serious bodily injury (or whether the injuries were foreseeable), and instead only had to prove Lauderbaugh acted with intent to cause serious bodily injury to Trooper Gadsby. The minutes-long, violent struggle between Lauderbaugh and the two troopers demonstrate his intent to inflict serious bodily injury. Further, the circumstances of this offense reasonably suggest Lauderbaugh intended to cause serious bodily injury to a law enforcement officer. Therefore, Lauderbaugh is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2019