J-A03042-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| AMANDA WALSH, | : | |
| | : | |
| Appellant | : | No. 1196 WDA 2018 |

Appeal from the Judgment of Sentence Entered September 12, 2017
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014518-2016

BEFORE:    BOWES, J., SHOGAN, J. AND STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED APRIL 26, 2019**

Amanda Walsh (Appellant) appeals *nunc pro tunc* from her September 12, 2017 judgment of sentence imposed following her convictions for driving under the influence (DUI) - highest rate of alcohol; DUI - general impairment/incapable of driving safely; and harassment - subject other to physical contact.  Upon review, we affirm.

Appellant was charged in connection with an altercation on September 14, 2016, in the Borough of Millvale, Pennsylvania.   The trial court conducted a bench trial on September 12, 2017, where the following facts were established.

> On September 14, 2016, the victim, Shawn Holtgraver, was on the front porch of his Millvale residence, waiting for his mother to come home.  Holtgraver observed his mother arrive in a gray truck that was being driven by Appellant. Appellant drove the vehicle up to the front of the house and parked with the

_____

*Retired Senior Judge assigned to the Superior Court.

passenger-side door facing the porch. Appellant's vehicle was no more than [50] feet from the front porch where Holtgraver was located. Holtgraver saw his mother sitting in the passenger seat of the vehicle.

Appellant exited the driver's side of the vehicle, laughing and babbling belligerently. Appellant told Holtgraver, "I got your momma drunk." Holtgraver noticed that his 72[-]year[-]old mother was inebriated, so he walked towards the vehicle to escort his mother back inside of the home. As Holtgraver approached the passenger side door of the vehicle, a verbal argument began between him and Appellant.

Holtgraver told Appellant to leave and that he would take care of his mother. Appellant became "really upset" and attacked him. Appellant punched Holtgraver in the mouth, and the two began to scuffle. Appellant bit Holtgraver several times, and Holtgraver suffered a broken thumb, which ultimately required surgery to repair. Holtgraver tried to subdue Appellant and fend her off until the police arrived. A neighbor observed the altercation and saw that Holtgraver was "trying to prevent [Appellant] from assaulting" and attacking him. He saw Holtgraver "sitting on his butt [] with his legs extended," bear hugging Appellant.

When officers came on to the scene shortly thereafter, Appellant was "irate," "very intoxicated," and "out of control." Officers observed red marks on Holtgraver's face and neck, as well as bite marks. Appellant did not have any marks or injuries. Officers secured the scene and took Appellant into custody. Appellant was uncooperative, and refused to perform field sobriety tests, telling officers, just "give me the fucking intox test." Chemical breath testing was performed at the station, with the first sample resulting in a reading of .166, and the second sample reading .170. While Appellant was at the police station, she admitted that she was driving the vehicle, and that she was drunk.

Trial Court Opinion, 10/10/2018, at 4-5 (titles and record citations omitted;

party designation altered).

At the conclusion of the trial, the trial court found Appellant guilty of the aforementioned crimes. On the same day, the trial court sentenced her for the DUI – highest rate of alcohol conviction, to serve four days at DUI – alternative to jail (DUI hotel) within 90 days; six months of probation concurrent to the DUI hotel; and a fine and court costs. The trial court also ordered her to pay the costs of the DUI hotel, obtain a drug-and-alcohol evaluation, attend safe-driving school, attend anger-management classes, and to have no contact with Holtgraver. The trial court imposed no further penalty for her conviction of DUI – general impairment/incapable of driving safely. Regarding her harassment conviction, the trial court sentenced her to 90 days of probation consecutive to her DUI sentence. Appellant did not file a post-sentence motion or appeal.

On April 6, 2018, the trial court revoked Appellant's probation because she, *inter alia*, failed to pay for and attend the DUI hotel. On that date, the trial court re-sentenced her to the same sentence originally imposed on September 12, 2017. During the probation violation hearing, Appellant informed the trial court that despite her request for her attorney to file an appeal from her original judgment of sentence, her attorney did not do so. Because the time for a direct appeal had expired by this point, she requested appointment of an attorney to assist her with filing a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. The trial court granted her request and appointed counsel on Appellant's behalf.

On May 18, 2018, Appellant timely filed a counseled PCRA petition, alleging that Appellant's trial counsel was ineffective for failing to comply with her request to file a direct appeal. PCRA Petition, 5/18/2018, at 7-8. She requested that the PCRA court reinstate her post-sentence and appellate rights. *Id.* at 10. The Commonwealth did not oppose her request. Answer to PCRA Petition, 6/13/2018, at 1-2. On June 13, 2018, the PCRA court granted her PCRA petition in part[1] and reinstated her post-sentence and appellate rights *nunc pro tunc*. PCRA Court Order, 6/13/2018, at 1.

Appellant timely filed a post-sentence motion alleging the verdict was against the weight of the evidence. The trial court denied the motion. Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises one issue for our consideration.

Did the trial court err in denying Appellant's [post-sentence motion] since Appellant's convictions of DUI and summary

---

[1] In her PCRA petition, Appellant also alleged that her trial counsel was ineffective for failing to examine defense witness Mary Jacobs regarding her alleged mispronunciation of a street name. PCRA Petition, 5/18/2018, at 8-10. As discussed in more detail *infra*, Jacobs testified that she dropped Appellant off at Beesesa Street, a fact the prosecutor emphasized in her closing argument and a contributing factor to the reason that the trial court did not find Jacobs to be credible. *Id.* According to Appellant, trial counsel should have established at trial that the Holtgravers lived at the corner of North Avenue and Bessie Street, which in turn would have demonstrated that Jacobs simply mispronounced the street name. *Id.* Accordingly, Appellant requested a new trial or evidentiary hearing. *Id.* However, the PCRA court did not grant this requested relief. *See* PCRA Court Order, 6/13/2018, at 1.

harassment were against the weight of the evidence since defense witness [] Jacobs, the only eyewitness, and a person with no motive to fabricate testimony, testified that she was the one driving Appellant's truck, not Appellant, and that [] Holtgraver assaulted Appellant, rather than Appellant assaulting Holtgraver[?] Hence, Appellant must be granted a new trial[.]

Appellant's Brief at 3 (unnecessary capitalization omitted).

We use the following standard to assess whether a trial court abused its discretion in denying a challenge to the weight of the evidence.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Izurieta*, 171 A.3d 803, 809 (Pa. Super. 2017) (citation omitted).

To support her weight-of-the-evidence challenge, Appellant points to the testimony of two witnesses. First, Appellant examines the testimony of Jacobs. At trial, Jacobs testified that she ran into Appellant and Holtgraver's mother outside of Cousin's Bar in Millvale. N.T., 9/12/2017, at 34. Jacobs claimed that Appellant asked her for assistance in escorting Holtgraver's mother home. *Id.* According to Jacobs, she agreed, assisted Appellant in

getting Holtgraver's mother into the car, and drove Appellant and Holtgraver's mother in Appellant's car to North Avenue and "Beesesa Street" in Millvale. *Id.* When they arrived, Jacobs got out of the car and walked away because she "wanted nothing to do with it." *Id.* at 35. As she was walking away, Appellant, Holtgraver, and Holtgraver's mother started arguing. *Id.* She turned around and saw Holtgraver shoving Appellant, but she continued walking away; again, she "wanted nothing to do with it." *Id.* at 35-36. On cross-examination, she acknowledged that she had known Appellant for a long time because she used to babysit her. *Id.* at 37. She confirmed the name of the street where she dropped off Appellant was Beesesa Street and spelled it out on the record. *Id.*

Appellant also focuses on the testimony of the Millvale Borough Police Chief, Timothy Komoroski. Chief Komoroski testified that Appellant told him at the hospital that she was driving the vehicle, she was drunk, and she told him "just give me the fucking intox test." *Id.* at 20, 25.

Appellant argues that Chief Komoroski's testimony regarding Appellant's admitting to driving was not credible because he failed to include the admission in the report he authored about the incident.[2] Appellant's

---

[2] In response to defense counsel's cross-examination questions about his failing to include Appellant's admission in his report, Chief Komoroski testified that he did include the admission in his report. Although the report was identified as Defense Exhibit A, it was not admitted into the record. N.T., 9/12/2017, at 24.

Brief at 12. Appellant contends that the trial court should not have relied upon Chief Komoroski's incredible testimony based upon this alleged "glaring omission," and instead should have relied upon the credible testimony of Jacobs, whose testimony proves that Appellant was not driving and not the aggressor in the fight. Appellant's Brief at 12-13. She asserts Jacobs was a disinterested witness with no motive to lie. *Id.* Further, he maintains that Jacobs clearly mispronounced Bessie Street during her testimony, which was problematic because the trial court stated at the close of trial that she did "not believe [Jacobs] whatsoever, especially considering that she dropped [Appellant] off at a different street [from where the incident occurred]." *Id.* at 12 (citing N.T., 9/17/2018, at 43).

The trial court offered the following analysis of Appellant's weight claim.

> As the fact-finder in this case, this court carefully studied the tone and demeanor of the witnesses, and this court found that the testimony of Holtgraver and the police officers was far more believable than the testimony of defense witness [] Jacobs.

> ***

> Contrary to Appellant's contention, Jacobs was not a disinterested witness who lacked motive to fabricate her testimony. In fact, Jacobs testified that she had known Appellant "for a long time," and she testified that she used to babysit Appellant. Jacobs' testimony did not have the "ring of truth," especially considering her tone and demeanor. Her testimony also was not corroborated by any other evidence. On the other hand, the testimony of Holtgraver was incredibly believable, and it was corroborated by other credible evidence, including observations made by the officers, the testimony of the neighbor

- 7 -

who saw the scuffle take place, and Appellant's own admission to the police that she was driving the vehicle. Holtgraver's demeanor and presentation were sincere and genuine, and, when this court weighed the evidence, there was no question or doubt in this court's mind that his account of the events was the truth. Holtgraver's testimony, the corroborating testimony, and the results of Appellant's chemical testing, weighed heavily against Appellant.

Accordingly, for all of the reasons cited above, there is no merit to Appellant's claim that she deserved a new trial because the verdict was against the weight of the evidence. Appellant's challenge to the weight of the evidence is, at its core, an invitation for the appellate court to reweigh the evidence and second-guess the credibility determinations made by this court. The reviewing court respectfully should decline to accept such an invitation because "[i]t was the function of . . . the finder of fact to evaluate the evidence and determine the weight it should be given." [**Commonwealth v. Lewis**, 911 A.2d 558, 566 (Pa. Super. 2006)]. There were no facts in this case that were "so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." [**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013)]. As such, this court did not palpably abuse its discretion when it denied her weight claim, and this contention should be rejected on appeal.

Trial Court Opinion, 10/10/2018, at 8-9 (titles and record citations omitted; party designation altered).

We agree with the trial court's assessment, and note in addition to the corroborating evidence described by the trial court, the officers observed injuries to Holtgraver, but Appellant had none. The trial court heard the evidence first-hand during the bench trial, determined the Commonwealth's witnesses presented more credible testimony than Jacobs' testimony, and

- 8 -

entered a verdict reflecting this credibility determination.[3]   Upon reconsideration of such verdict, the trial court concluded in its discretion that the verdict did not shock its sense of justice.   We discern no abuse of discretion in this conclusion.   ***See Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000) ("Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination[.]").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/26/2019

---

[3] We note that even if Jacobs could be believed, by her own testimony, she did not stick around to watch the altercation between Appellant and Holtgraver, and therefore her testimony does not definitively prove that Appellant did not attack and injure Holtgraver.  Furthermore, we also do not agree that her reference to Bessesa Street clearly establishes that she simply mispronounced Bessie Street.  Even if that were so, at this juncture, the PCRA court did not grant Appellant's request for a new trial on this issue, and the proximity of the Holgravers' house to any other street except to North Avenue, the street it was located on, had not been established as a fact of record.  Moreover, the trial court explained that she found Jacobs' testimony to be less credible than Holtgraver's testimony overall, not just on that one issue, which is a judgment call best made by the trial court hearing the witnesses firsthand.  N.T., 8/2/2018, at 5.