J-S57015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHRIS JOHNSON | : | |
| | : | |
| Appellant | : | No. 513 EDA 2018 |

Appeal from the Judgment of Sentence October 18, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001191-2017

BEFORE:   PANELLA, J., PLATT*, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 21, 2018**

Appellant, Chris Johnson, challenges the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his conviction for first-degree murder. We affirm.

The trial court summarized the relevant facts of this case as follows.

The victim, Marquise Matthews, sold heroin on the 2900 block of Rosehill Street in Philadelphia. [Appellant] also sold heroin, just two blocks west, at C and Cambria Streets. The blocks in the neighborhood each sold their own "brand" of heroin. No two brands were sold on the same block. The brand sold on Matthews's block was "Block Party."

On the corner of the 2900 block of Rosehill and Cambria Streets was the Good Good Chinese store. Both Matthews and [Appellant] frequented the store. Multiple brands of heroin, including Block Party, were sold there, which was uncommon. Typically, when competing brands were sold within the same territory, an altercation would result.

On the evening of October 11, 2016, a shootout occurred behind the store. No one was injured in the shooting; however, fourteen

_____
* Retired Senior Judge assigned to the Superior Court.

bags of Block Party heroin were recovered at the scene, as well as two .45-caliber and five 9-millimeter fired cartridge casings.

Five nights later, on October 16, 2016, Matthews was selling drugs with his associate, Jamil Myrick, near the middle of the 2900 block of Rosehill Street. Also with the pair was another associate known as "Poo." At approximately, 12:09 a.m., Matthews and Myrick were standing outside on the steps of a home, and Poo was perched on a car across from them, when [Appellant] approached the group and began to fire shots at them. Myrick immediately began to run down the street, while Poo dove out of the way. Matthews also tried to dive out of the way[;] however, he was struck once in the head. [Appellant] fled the scene, running down Cambria towards C Street.

Philadelphia police officers responded to the scene upon a report of shots fired. When they arrived, they found Matthews laying on the sidewalk. The officers placed Matthews in a police wagon, and began to transport him to Temple University Hospital. However, while en route, the wagon was met by paramedics from the Philadelphia Fire Department, who pronounced Matthews dead.

Philadelphia police detectives then conducted an investigation of the shooting. During the course of the investigation, Tyera Hyman, Jamil Myrick, and Keenan Bernard positively identified [Appellant] as the shooter. Additionally, police recovered six .45-caliber fired cartridge casings from the scene. Ballistics confirmed that all of the casings came from the same gun, and that the same gun was also used in the October 11, 2016 shootout that occurred behind the Good Good Chinese store. A text message was recovered from [Appellant's] cell phone, in which he admitted to participating in a shootout on October 11, 2016.

Trial Court Opinion, filed 5/4/18, at 2-4 (citations omitted).

Appellant proceeded to a jury trial, where he was convicted of first-degree murder, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and possessing instruments of crime.[1] The court sentenced Appellant to life imprisonment without the possibility of

_____

[1] 18 Pa.C.S.A. §§ 2502(a); 6106(a)(1); 6108; and 907(a), respectively.

parole. Appellant filed a timely post-sentence motion, which was denied. Appellant then filed a notice of appeal. This case is now properly before us.

In his first issue, Appellant contests the admission of cumulative evidence about his history of dealing drugs. Specifically, Appellant contends his drug dealing was minimally connected to Marquise Matthews's murder, and the evidence damaged his character, thus depriving him of a fair trial.

We evaluate the admission of evidence as follows.

> With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record.

*Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015) (citation omitted).

"All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002) (citation omitted). The court may exclude relevant evidence if its probative value is outweighed by a danger of unfair prejudice. *See* Pa.R.E. 403.

While evidence that a defendant has committed other crimes or bad acts may not be used to prove the defendant's propensity for committing crimes,

such evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. ***See*** Pa.R.E. 404(b)(1)-(2). The Pennsylvania Supreme Court "has also recognized the *res gestae* exception," which permits the admission of evidence of other crimes or bad acts to "tell the complete story." ***Commonwealth v. Hairston***, 84 A.3d 657, 665 (Pa. 2014) (internal quotations and citation omitted). "In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact." ***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009) (citation omitted).

And, "[e]vidence may be excluded if its probative value is outweighed by the needless presentation of cumulative evidence." ***Commonwealth v. Flamer***, 53 A.3d 82, 88 n.6 (Pa. Super. 2012) (citation omitted). "Evidence that strengthens or bolsters existing evidence is corroborative evidence; we have previously explained that corroborative evidence is *not* cumulative evidence." ***Id***. (emphasis added; citation omitted).

Here, the Commonwealth presented evidence of Appellant's involvement in a drug-dealing organization. Specifically, counsel elicited evidence that: the area where Mr. Matthews was murdered is known for its high volume of drug dealing; Mr. Matthews sold drugs; Appellant also dealt drugs around the time of the incident; each block belonged to a different drug gang; two rival gangs both sold drugs in the Good Good Chinese store, which was highly unusual; a shootout occurred at the store five nights before Mr.

Matthews's murder, over a suspected drug territory dispute; that Appellant admitted his participation in the shootout to a friend via text message; and that Appellant also admitted he was carrying a gun at the time. **See** N.T. Trial, 10/12/17, at 72-192. Based on this evidence, the Commonwealth theorized that Appellant had murdered Mr. Matthews because of a drug territory dispute.

To the extent Appellant denigrates this evidence as cumulative, he fails to identify any evidence that merely reiterates, but does not strengthen or bolster, existing evidence. Instead, Appellant challenges the introduction of all evidence showing "alleged prior drug dealing creat[ing] a presumption of premeditation." Appellant's Brief, at 10. But the court permitted the Commonwealth to present this evidence in order to show Appellant's motive for the crime. Evidence of Appellant's involvement in an illegal drug distribution organization was certainly prejudicial. However, it also provided key evidence for the jury to understand how he knew Mr. Matthews, and why Appellant wanted to kill him.

And, the trial court presented a limiting instruction regarding this evidence, telling the jury to consider the information only as evidence to establish Appellant's motive for murder. **See Commonwealth v. Hairston**, 84 A.3d 657, 666 (Pa. 2014) (noting that jurors are presumed to follow trial court's instructions). Thus, we find the court did not abuse its discretion in determining the probative value of this evidence outweighed its prejudicial effect, and admitting it. Appellant is due no relief on this claim.

In Appellant's second issue, he challenges the weight of the evidence supporting his conviction. In particular, he takes issue with conflicting statements made by two Commonwealth witnesses about Appellant's precise location at the time of the shooting.

We do not review challenges to the weight of the evidence *de novo* on appeal. **See Commonwealth v. Rivera**, 983 A.2d 1211, 1225 (Pa. 2009). Rather, we only review the court's exercise of its discretionary judgment regarding the weight of the evidence presented at trial. **See id**.

A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict. **See Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). With regard to weight claims, "the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." **Commonwealth v. Lewis**, 911 A.2d 558, 565 (Pa. Super. 2006) (citation omitted). In evaluating weight of the evidence claims, the appellate court may not substitute its judgment based on a cold record for that of the trial court. **See Commonwealth v. Izurieta**, 171 A.3d 803, 808 (Pa. Super. 2017).

"[W]e may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly

shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

At trial, the Commonwealth presented evidence from Tyera Hyman. Because Ms. Hyman refused to cooperate and ultimately recanted her previous statement to police that she recognized Appellant as the shooter, the Commonwealth introduced that statement to impeach her testimony. *See* N.T. Trial, 10/11/17, at 113. In it, Ms. Hyman told police she had previously gone on a date with Appellant, and had seen him many times before the shooting. *See id*., at 124. On the night of the shooting, Ms. Hyman stated that she was leaving her house to go to the corner store when she noticed Mr. Matthews and a friend sitting on the steps of a house on Rosehill Street. *See id.*, at 119. She also observed Appellant leaning against cars parked on the block, seemingly speaking to Mr. Matthews and the other man. *See id*., at 120. Ms. Hyman said she then saw Appellant pull out a gun and fire several times at the men, before she ran into her home for safety. *See id*. According to Ms. Hyman, she watched from the window as Appellant walked past her door and down the block after the shooting. *See id*. After Appellant passed, she left her house and saw Mr. Matthews lying in the street, dead from a gunshot wound to his head. *See* N.T. Trial, 10/11/17, at 121. At the police station, Ms. Hyman identified Appellant's photo as that of the shooter. *See id*., at 126.

The Commonwealth then called Jamil Myrick to the stand. Mr. Myrick stated that he, Mr. Matthews, and a friend of Mr. Matthews's whom he did not know were sitting on the steps of a house on Rosehill Street. *See id*., at 187.

Mr. Myrick stated that Mr. Matthews and Mr. Matthews's friend were selling heroin that evening, which was branded "Block Party." *See id*., at 190. Mr. Myrick told police that Appellant walked across the street and began shooting at them, killing Mr. Matthews. *See id*., at 193-196.

The Commonwealth then introduced Mr. Myrick's previous statement to police on the night of the murder into evidence. *See id*., at 198. In it, Mr. Myrick told the officers that he did not know the shooter, but would recognize him if he saw him again. *See* N.T. Trial, 10/11/17, at 235. Mr. Myrick then identified Appellant's picture in a photo array as that of the shooter. *See id*., at 205.

On cross-examination, Mr. Myrick told Appellant's counsel that Mr. Matthews's friend who had been with them on the night of the shooting was nicknamed "Poo." *See id*., at 218. Mr. Myrick had previously told police he did not know the third man's name, only that the man was a friend of Mr. Matthews's. *See id*. Defense counsel vigorously cross-examined Mr. Myrick on this point, emphasizing that he had lied to investigators. *See id*., at 218-223.

In his brief, Appellant recapitulates the above evidence and argues that Mr. Myrick's revelation of the identity of the third friend as "Poo" casts doubt on exactly where that man was standing at the time of the shooting. Seemingly, Appellant believes that if Poo was leaning against the car, Poo may have been the shooter. Appellant summarily concludes that the weight of the

evidence was against his conviction, as Poo's existence means Appellant could not have been the shooter.

Appellant is confused on several points. Initially, Appellant fails to explain how the disclosure of Poo's name makes him the likely shooter. In his interview with police, Mr. Myrick informed police that another man was present on the night of the shooting, and that the other man was a friend of Mr. Matthews's. Appellant does not claim to have been unaware that another man was present that night, only that he did not know that individual's name. Appellant offers no other evidence to substantiate his belief that Poo may have killed Mr. Matthews.

And the Commonwealth offered substantial evidence that Appellant was the shooter. Ms. Hyman told police in her statement that Appellant approached the men sitting on the step and fired his handgun several times, killing Mr. Matthews. Ms. Hyman had met Appellant many times before and was unlikely to be confused about his identity. She selected Appellant's picture out of a photo array and confirmed he was the shooter. Though Ms. Hyman was uncooperative in her testimony at trial, the Commonwealth introduced her previous statement to police. And, her statement was corroborated by that of Mr. Myrick. Mr. Myrick identified Appellant in court as the shooter. Appellant elicited no testimony from Mr. Myrick that might demonstrate a motive for wrongly accusing Appellant of a crime that Poo committed. Thus, we fail to see how the mere revelation of Poo's name could overcome the considerable

evidence presented of Appellant's guilt. We decline to grant Appellant relief on this claim. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/18