J-S16021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                                    :

            v.                        :
                                    :

SHAHEED TARIQ GINDRAW      :
                                    :
           Appellant           :      No. 1714 MDA 2024

Appeal from the Judgment of Sentence Entered October 4, 2024
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000116-2024

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY BOWES, J.:                 **FILED JUNE 30, 2025**

Shaheed Tariq Gindraw appeals from the judgment of sentence of five to ten years of imprisonment imposed upon his convictions for burglary, aggravated assault, simple assault, recklessly endangering another person ("REAP"), criminal trespass, defiant trespass, and criminal mischief.  We affirm.

Appellant's convictions are founded upon the events of December 26, 2023.  His arguments on appeal primarily stem from the fact that the victim, Valencia Rivera, the mother of his children with whom he improperly resided

at a property owned by the Lycoming County Housing Authority, recounted two different versions of those events.[1]

As established through contemporaneous recordings and the testimony of various Pennsylvania State Police troopers, Ms. Rivera first called 911 just before 7:00 p.m. on the evening in question. Trooper Vincent Kyle responded to find Ms. Rivera in a panic and sobbing, with red marks around her collarbone and forearm. She indicated that a verbal dispute with Appellant turned physical, and he fled when she made the emergency call. Trooper Kyle left to seek a warrant for Appellant's arrest, which was issued at 10:42 that night. *See* N.T. Trial, 8/6/24, at 27-33.

Before the police were able to locate Appellant and take him into custody, Ms. Rivera again called 911, asserting that she needed immediate help because Appellant had returned to her residence, armed, and was trying to force his way in. This time, Trooper Stephen Schramm was the first to arrive. Hearing a male voice screaming and a loud pounding like a foot kicking a door coming from the rear of the home, Trooper Schramm proceeded along the side of the residence toward the back. As he was about to round the

---

[1] Jackie Schuler, the manager of the site where Ms. Rivera lived, explained at Appellant's trial that, as of September 11, 2023, he was not permitted to enter the boundaries of any property owned by the Lycoming County Housing Authority, let alone stay there. Ms. Schuler served Appellant with this trespass notice at the local magisterial district judge's office on October 25, 2023, more than two months prior to the incident giving rise to the instant criminal charges. *See* N.T. Trial, 8/6/24, at 51-56.

corner, the noises stopped. He then found the back door open and heard screaming coming from the front of the dwelling. Fearing an ambush inside the home from an armed Appellant, Trooper Schramm went back the way he came to find Appellant standing over Ms. Rivera in front of the home. As he yelled for Appellant to show his hands, the trooper witnessed Appellant strike Ms. Rivera twice, with extreme force, in her head. As soon as Appellant realized the trooper was there, he fled. A K-9 unit arrived to track Appellant, leading to the discovery of a firearm abandoned in the grass along his flight path. The weapon was registered to Appellant. *Id*. at 123-39.

Trooper Dylan Houser documented an investigation of the scene and observed that the frame around the back door to Ms. Rivera's residence was damaged, with debris scattered throughout the room. Specifically, the portion of the trim adjacent to the deadbolt was missing, congruent with the deadbolt being forced through the trim. Trooper Houser also took a statement from Ms. Rivera wherein she indicated that, in addition to the visible protuberance and laceration behind her right ear, she had a lump from a different blow that was hidden by her hair.[2] She explained that when Appellant returned to the home, he tried to unlock the front door with a key, and she manually relocked it. After this continued several times, she suspected he would try the back

_____

[2] Trooper Houser testified that the visible injury was consistent with Ms. Rivera being hit with a hard object and inconsistent with a wound caused by a fist. *See* N.T. Trial, 8/6/24, at 191.

- 3 -

door. They did the same locking and unlocking back-and-forth there until Appellant kicked in the door, knocking her back. She ran through the house and out the front door until Appellant caught up to her, pushed her down, brandished his gun, and struck her twice in the head.[3] *Id*. at 163-68, 207-208.

However, Ms. Rivera told a somewhat different tale at Appellant's trial. She informed the jury that the troubles started earlier that day when the couple argued about Appellant's cheating. While he took a shower, she appropriated his car keys and moved his car somewhere out of sight to try to prevent him from going off to see another woman. When she returned to the home, she and Appellant tussled over his phone during which she slipped and fell outside. Back inside, the two pushed and hit each other, and he pulled her hair to get her off of him. After Appellant left, she called 911 because she thought it would be good for him to stay away for a night. That is why she relocked the back door when he came back later, and she again called 911 to diffuse the situation. Appellant did not have to punch or kick the door to get through it, just push it a little bit because it was flimsy. She ran into the front yard, where Appellant pulled her shirt and she fell and blacked out. She denied that Appellant used a firearm and lied to the police and hospital when she said he had. *Id*. at 75-89.

_____

[3] Ms. Rivera subsequently went to the hospital and was diagnosed with a concussion. *See* N.T. Trial, 8/6/24, at 92-94.

- 4 -

Upon hearing all the evidence, the jury convicted Appellant of the offenses listed *supra*. The trial court later sentenced Appellant as indicated above. Appellant filed a timely post-sentence motion challenging the sufficiency and weight of the evidence. Therein, Appellant moved for an arrest of judgment on the following counts: (1) burglary, due to lack of proof that he intended to commit a crime in his partner's home; (2) burglary and trespass, because he had a reasonable belief of license to enter the home; (3) criminal mischief, as there was reasonable doubt that Appellant damaged the door to enter the home on the night in question; and (4) assault, based upon a lack of proof that Appellant caused or attempted to cause injury to the victim, who testified that she fell and hit her head. *See* Post-Sentence Motion, 10/11/24 at ¶¶ 17-20. Appellant also moved for a new trial upon the assertion that the verdict was contrary to the weight of the evidence. *Id*. at ¶¶ 10-14.

Unpersuaded, the trial court denied the motion and this timely appeal followed. Both Appellant and the trial court submitted their respective Pa.R.A.P. 1925 filings. Consistent therewith, Appellant presents the following questions for our determination:

    I.    Whether the evidence presented at trial failed to prove every element of the crimes charged beyond a reasonable doubt, and, therefore, was insufficient to support Appellant's convictions.

    II.    Whether the guilty verdict following Appellant's trial was against the weight of the evidence presented.

Appellant's brief at 7 (cleaned up).

Appellant thus presents this Court with both sufficiency and weight claims. As our Supreme Court explained, the two types of challenges are distinct:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (cleaned up).

Likewise, this Court's role varies significantly between the two claims. Regarding the trial court's ruling as to the sufficiency of the evidence, "our well-settled standard of review is *de novo*, and our scope of review is limited

to the evidence admitted at trial viewed in the light most favorable to the Commonwealth as verdict winner." **Commonwealth v. Salinas**, 307 A.3d 790, 793 (Pa.Super. 2023). However, "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (cleaned up).

In denying Appellant's post-sentence motion, and again in its Rule 1925(a) opinion, the trial court offered the following explanation:

> In this matter, the Commonwealth's evidence in support of the criminal charges listed in the information [in this case] was overwhelming. Although there was some evidence to suggest that [Appellant] had earlier enjoyed permission to be at the victim's home, [Appellant] broke down a locked door to enter the premises on the night of the incident. There was substantial evidence that [Appellant] struck the victim, although his assault did not actually result in life-threatening injury. The fact that the victim was not more seriously injured does not negate the jury's verdict that [Appellant's] conduct constituted an attempt to cause serious bodily injury.
>
> In the view of this court, it cannot be seriously argued that the Commonwealth's evidence at the trial was so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. On the contrary, the Commonwealth's evidence ably supported the jury's verdict.

Opinion and Order, 11/4/24, at 2-3 (cleaned up); Trial Court Opinion, 12/11/24, at 1-2 (cleaned up).

Plainly, the trial court did not provide separate analyses for Appellant's distinct challenges. Further, given that Appellant identified specific elements of the various crimes for which he claimed the Commonwealth's evidence was

- 7 -

lacking, this Court would have preferred a more detailed addressment and discussion of the facts and law applicable to the issues. However, since we are able to extract enough information from the court's laconic opinion to apply our standards of review, we need not remand for a more thorough analysis. *Cf. Commonwealth v. Ragan*, 653 A.2d 1286 (Pa.Super. 1995) (remanding for a trial court opinion on the weight of the evidence because the trial court instead addressed the sufficiency of the evidence).

Hence, we first proceed to our *de novo*, plenary review of Appellant's various sufficiency challenges. In doing so, we must consider all the evidence admitted at trial, remaining mindful of the facts that the Commonwealth may sustain its burden through circumstantial evidence and that the jury, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Gary*, 332 A.3d 118, 123–24 (Pa.Super. 2025) (cleaned up).

We begin with Appellant's burglary and trespass convictions pursuant to the following statutes:

**§ 3502. Burglary**

**(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1)(i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein[.]

. . . .

**(b) Defense.--**It is a defense to prosecution for burglary if any of the following exists at the time of the commission of the offense:

. . . .

(3) The actor is licensed or privileged to enter.

18 Pa.C.S. § 3502.

**§ 3503.  Criminal trespass**

**(a) Buildings and occupied structures.--**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

. . . .

**(b) Defiant trespasser.--**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor[.]

**(c) Defenses.--**It is a defense to prosecution under this section that:

. . . .

(3) the actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain.

18 Pa.C.S. § 3503.

Appellant first assails the Commonwealth's proof that he entered Ms. Rivera's home with the intent to commit a crime therein, as is required to sustain his burglary conviction. He focuses on her trial testimony that the physical altercation between her and Appellant was mutual, that he was merely frustrated with her repeated locking of the door when he tried to enter, and that he did not threaten to hurt her. *See* Appellant's brief at 16-17. He further alleges that "[t]he Commonwealth presented no additional evidence other than Ms. Rivera's testimony in regards to the burglary." *Id*. at 18. In a similar vein, he asserts that there was insufficient evidence to establish that he broke into the residence, since he used his key to enter. *Id*. at 20.

Appellant's arguments fly in the face of our standard of review, framing the evidence in a light most favorable to himself and overlooking that the jury was free to conclude that it was at trial, not in her 911 calls or her statements to the police and hospital personnel, that Ms. Rivera prevaricated. Further, Appellant misstates the record in claiming that her testimony was the only evidence regarding the burglary. Through the testimony of Troopers Schramm and Houser about what they heard and saw at the scene, from the angry shouting and kicking on the door, leaving behind a clear mark of the deadbolt tearing through the door trim and scattering debris around the room, followed by the immediate assault of Ms. Rivera when Appellant caught her, the Commonwealth proffered sufficient evidence to allow the jury to find that Appellant forced his way into the home with the intent to commit a bodily

injury crime. *Cf. Commonwealth v. Wilamowski*, 633 A.2d 141, 144 (Pa. 1993) (holding intent to commit crime in structure was not proven by evidence that the defendant kicked in a door where the defendant then "walked away from it without any showing that he entered the structure or attempted to enter").

Appellant's next argument pertains to his license or privilege defenses to his convictions for burglary, criminal trespass, and defiant trespass. In particular, he maintains that the Commonwealth failed to prove that he did not reasonably believe that he was licensed or privileged to enter the housing unit. According to Appellant, the evidence showed that he had a reasonable belief that he was privileged to enter Ms. Rivera's home, since he openly resided there and thought Ms. Rivera had "cleared up" the issue about Appellant's residence with Ms. Schuler, the property manager. *See* Appellant's brief at 17-18.

As the Commonwealth aptly counters, Ms. Schuler's testimony about the trespass notice she served upon Appellant, which he acknowledged in writing two months prior to the events underlying his convictions, plainly established that he had no license or privilege to be on the premises. *See* Commonwealth's brief at 14. Furthermore, even if Ms. Rivera had previously led Appellant to believe that he was permitted to enter her home, her actions of relocking the door each time he tried to enter unequivocally communicated that she had revoked that privilege. *See Commonwealth v. Benito*, 133

A.3d 333, 336 (Pa.Super. 2016) ("Benito's privilege to be present in the apartment flowed directly from the license granted to him by L.C.[, his wife and the sole lessee]. Once L.C. repeatedly made it clear to Benito that she did not want him on the premises, his privilege was revoked. This lack of privilege—and Benito's knowledge thereof—is evidenced by the fact that he resorted to kicking in the door to gain entry."). Accordingly, the Commonwealth's evidence was more than ample to allow the jury to find that Appellant lacked license or privilege to enter Ms. Rivera's abode at the time he forced his way in.

Appellant's remaining sufficiency challenges to his convictions: simple assault pursuant to 18 Pa.C.S. § 2701(a)(1) (indicating that "a person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another"); aggravated assault under 18 Pa.C.S. § 2702 ("A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]"); and REAP, as defined by 18 Pa.C.S. § 2705 ("A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.").

Appellant argues that the Commonwealth did not prove the *mens rea* elements of these crimes, namely that he acted with the intent to cause

Ms. Rivera bodily injury or serious bodily injury. He insists, again based solely upon her trial testimony to the exclusion of her prior inconsistent statements and the Troopers' testimony, that the evidence demonstrated that he had no weapon, Ms. Rivera started the physical conflict, and her head injury stemmed from her fall. *See* Appellant's brief at 24.

However, viewing all the evidence in the light most favorable to the Commonwealth, giving it the benefit of all reasonable inferences, the jury was able to conclude that Appellant struck Ms. Rivera with extreme force in the head with the firearm he discarded during his subsequent flight or another hard object, causing her to sustain a concussion and lose consciousness, ceasing his assault only due to Trooper Schramm's arrival. *Accord Commonwealth v. Lewis*, 911 A.2d 558, 565 (Pa.Super. 2006) (concluding evidence was sufficient to establish intent to cause serious bodily injury where male assailant repeatedly struck female victim in the head with a closed fist, causing her to be dazed and sustain lacerations, and only fled when the police approached). Thus, the Commonwealth produced ample evidence of Appellant's intent, and attempt, to cause serious bodily injury.

Having concluded that none of Appellant's sufficiency challenges merits relief, we turn to his weight-of-the-evidence arguments. These reiterate many of the contentions we rejected in the sufficiency context, such as his belief that he was licensed to enter the residence, that he used his key to do so, that he merely engaged in a mutual scuffle with Ms. Rivera that she started,

and that her injuries resulted from her fall. *See* Appellant's brief at 32. Ignoring or dismissing the unhelpful testimony of Troopers Schramm and Houser about what they witnessed at the scene, Appellant maintains that there was no evidence to suggest that he broke down the door to get into the home or that he actually struck Ms. Rivera with an implement or his hand. *Id*. He insists that Ms. Rivera's trial testimony was "the only rendition of the facts that makes sense with the evidence collected by the Pennsylvania State Police," such that the trial court abused its discretion in not finding the jury's verdict shocking to the conscience. *Id*. at 31.

The trial court indicated that it denied Appellant's claim because it found the evidence in support of the verdicts to have been overwhelming. We read this as a determination that it did not deem the facts highlighted by Appellant to be "so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Widmer*, 744 A.2d at 752 (cleaned up). We discern no abuse of discretion on the part of the trial court in making this assessment. Contrary to Appellant's repeated protestations, the Commonwealth offered ample evidence, detailed at length above, suggesting that Ms. Rivera's original version of events was the honest one, and, as too often happens in these cases, she declined to adhere to the truth when she faced her attacker in court. Since the trial court's ruling is supported by the record and eminently reasonable, we have no cause to rule in Appellant's favor on his weight claim.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 06/30/2025